HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

   Plaintiff,

   v.

CARLOS R. DANIELS,

   Defendant.

Case No. CR06-5350RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant Daniels' Motion to Suppress Seized Evidence and Motion to Suppress Statements [Dkt. #36] and Motion to Suppress Intercepted Communications for Failure to Demonstrate Necessity[1] [Dkt. #58].

Having considered the entirety of the records and file herein, the Court rules as follows:

Daniels is charged along with two co-defendants in a thirteen count Superseding Indictment. Daniels is charged in Count One with conspiracy to distribute five (5) kilograms or more of cocaine; in Count Four with possession with intent to distribute five (5) kilograms or more of cocaine; in Count Five with being a felon in possession of a firearm; in Count Six with possession with intent to distribute five (5) grams or more of cocaine base; in Count Seven with possession with intent to distribute five hundred (500) grams or more of cocaine; and, in Counts Eight, Nine and Ten with possession of a firearm in furtherance of a drug

---

[1] Defendant Campos joins in Daniels' Motion to Suppress Intercepted Communications.

ORDER
Page - 1

trafficking offense. The Superseding Indictment also seeks the forfeiture of real property, currency, vehicles, jewelry and firearms allegedly used to further, or obtained as a result of, the charged offenses.

Daniels has moved to suppress the intercepted wire communications that were obtained pursuant to an order signed by United States District Judge James L. Robart and has moved to suppress all evidence seized and any statements made as a result of his warrantless arrest. Because the probable cause relied upon by the agents to arrest Daniels was based in part upon the intercepted telephone calls, the Court will first address Daniels' motion to suppress the intercepted communications. For the reasons stated herein, Daniels' motion to suppress intercepted communications and motion to suppress evidence will be denied. Because Daniels does not specify what statements he seeks to suppress (and because the government indicates that it is not aware of any post-arrest statements by Daniels), his motion insofar as it seeks to suppress statements will be denied without prejudice.

## MOTION TO SUPPRESS INTERCEPTED COMMUNICATIONS FOR FAILURE TO DEMONSTRATE NECESSITY

On May 11, 2006 the United States through a specially designated Department of Justice Trial Attorney applied for an Order Authorizing the Interception of Wire Communications (commonly referred to as a "wiretap"). The application was supported by a 37-page affidavit prepared by DEA Agent Stephen VerDow which sets forth the agent's background and experience in narcotics investigations and details the investigation into the criminal activity of Daniels' co-defendant Jose Luis Campos and others. United States District Judge James L. Robart approved the application and entered an Order authorizing the wiretap of Campos' cellular telephone.

Title 18, United States Code, Section 2518 sets forth the procedure for obtaining a wiretap. The application shall include:

> (1)(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed,
>
> * * *
>
> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous; . . ..

18 U.S.C. § 2518(1)(b), (c). The Court may authorize the wiretap "if the judge determines on the basis of the facts submitted by the applicant that -

ORDER
Page - 2

>     (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous:. . .."

18 U.S.C. § 2518(3)(c). "The Court authorizing a wiretap has considerable discretion, so the standard of review is deferential." *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002) (citation omitted).

Defendant Daniels argues that the wiretap evidence should be suppressed because the "necessity" requirement of 18 U.S.C. § 2518 was not met. He argues that law enforcement should have relied more on normal investigative procedures, and that Agent Verdow's affidavit contains falsities and omissions. When the affidavit is purged of the alleged falsities and omissions, Daniels argues, it does not support the necessity requirement for issuance of a wiretap order.

Daniels' arguments are not well-taken. The "necessity requirement means that the affidavit must set out a factual background that shows that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir. 1986). The factual allegations in the affidavit are reviewed "as a whole, and in a common sense fashion." *Id*. (citation omitted). Furthermore, when investigating criminal conspiracies "the government is entitled to more leeway in its investigative methods," *United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002), because "conspiracies pose a greater threat to society than individual action toward the same end." *McGuire*, 307 F.2d at 1197.

Here, Agent Verdow's affidavit contains the factual predicate for Judge Robart's finding that the wiretap was necessary because, despite the use of normal investigative procedures, it appeared reasonably unlikely that law enforcement would be able to reveal the full scope of the conspiracy without the use of the wiretap. The affidavit sets forth that the pre-wiretap investigation involved the use of five confidential informants. One confidential informant was able to purchase narcotics from Daniels' co-defendant Campos, but was unable to obtain information about other members of the conspiracy including Campos' source of supply. Based upon Verdow's experience, he concludes that because of Campos' demonstrated distrust of those Campos dealt with, any attempt to penetrate the organization further with confidential informants would not likely be successful. For the same reason, Verdow concludes that using an undercover law enforcement officer to infiltrate the organization would also not likely be successful. These conclusions are reasonable.

The affidavit also sets forth that other less intrusive investigative techniques were utilized such as pen registers, personal surveillance, pole cameras, a mail cover, and a search warrant in Anchorage, Alaska on a U.S. Express Mail package. While these techniques provided useful in gaining some information, the agents were unable to identify other members of the conspiracy or the source of supply. Verdow's conclusion that continued use of these investigative techniques appear unlikely to result in further infiltration of the organization is reasonable. The affidavit sets forth other investigative techniques such as calling witnesses before the Grand Jury and searching the trash of suspects. Again, Verdow's conclusion that these techniques appear unlikely to result in further infiltration of the organization is reasonable.

Daniels argues without evidentiary support that Verdow's affidavit "contains material misstatements and omissions regarding the necessity" for the wiretap. Motion, p. 6 [Dkt. #58]. Daniels merely disagrees with Verdow's conclusions as to the relative success of the investigative techniques employed and as to the lack of probable success of the other available investigative techniques. His alleged "material misstatements and omission" do not rise to the showing required for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); See generally *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir.), *cert. denied*, 531 U.S. 1`000 (2000).

Therefore, because the application for a wiretap was shown to be necessary, Judge Robart properly issued his Order authorizing the government to intercept Campos' phone calls. Defendant Daniels' motion will be denied.

### MOTION TO SUPPRESS SEIZED EVIDENCE AND MOTION TO SUPPRESS STATEMENTS

Daniels has moved to suppress the evidence seized as a result of his warrantless arrest and the subsequent search of his vehicle incident to his arrest. He has also moved to suppress any post-arrest statements. He further seeks to suppress evidence seized as a result of the search of his residence based upon a search warrant authorized by United States District Judge Robert J. Bryan.

On May 13, 2006, as a result of the wiretap discussed above, agents intercepted a call from Campos to one "Carlitos" (later identified as Carlos Daniels). In the call using coded language, Campos told Daniels that the price of cocaine was $14,200 per kilogram. Daniels indicated that he would purchase 20 kilograms. In a call later that day, Daniels again inquired of Campos about cocaine, was told the price was now $14,500 per kilogram. On May 16, 2006 agents intercepted approximately ten phone calls

between Daniels and Campos. During the calls, Daniels agreed to purchase 24 kilograms of cocaine.

Based on the intercepted phone calls, agents established surveillance of Campos and co-defendant Miguel Angel Peralta Alonzo who were driving the same vehicle they were observed driving during a controlled buy with a confidential informant on March 30, 2006. Between approximately 5:00 p.m. and 6:40 p.m. the agents intercepted several phone calls between Campos and Daniels. At 5:02 p.m. Campos tells Daniels he is near Southcenter. At 5:47 p.m. Daniels informs Campos that he is about to head towards the "studio" (according to Daniels, 728 Pacific Avenue houses offices and a recording studio), and Campos complains that Daniels is taking too long. At 6:01 p.m., Campos tells Daniels that he is waiting, and Daniels indicates that he is on his way but that he had to go get "mine." (The government alleges that "mine" refers to money.) At 6:37 p.m. Campos tells Daniels to open the back door of 728 Pacific Avenue, and Daniels tells Campos to leave "them things" in his vehicle. (The government alleges that "them things" refers to cocaine.) At about 6:40 p.m. the agents observed Campos' vehicle parked on Commerce Street behind 728 Pacific Avenue in Tacoma. The agents also observed a 2002 Cadillac Escalade parked in front of 728 Pacific Avenue. Department of Licensing records indicated that the Escalade was registered to Daniels.

At approximately 7:55 p.m. agents observed Campos and Peralta Alonzo exit from the rear of the building and Daniels exit the front of the building. Peralta Alonzo was carrying a cardboard box which he put into his vehicle. Daniels was carrying a guitar case which he appeared to struggle with when he put it into the Escalade. At 7:52 p.m. the agents intercept a call from Campos to Daniels wherein Campos tells Daniels to pass in front of his vehicle and he will follow him. The vehicles then left and met up again a few blocks away where they pulled to the side of the street. Peralta Alonzo transferred a backpack sized bag to Daniels, returned to his vehicle, and both vehicles entered onto the freeway and headed north. The agents followed. At approximately 8:20 p.m. agents stopped Campos' vehicle and arrested him and Peralta Alonzo. They seized the cardboard box and over $154,000 in cash.

The Escalade was followed as it exited the freeway onto 272nd Street and onto Star Lake Road. The agents stopped the Escalade. Daniels was in the driver's seat with a large plastic bag between his legs and feet. Daniels was arrested. A search of the Escalade revealed that the plastic bag contained $182,500 in cash, and agents also found 24 kilogram size packages which field tested positive for cocaine. Daniels

1  contests the stop and search as lacking probable cause.

2  Probable cause to arrest exists if "the facts and circumstances within [the officers] knowledge and
3  of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing
4  that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).
5  And, once law enforcement has probable cause to believe that there is contraband in a motor vehicle, they
6  may conduct a warrantless search of that vehicle. *See Michigan v. Thomas*, 458 U.S. 259 (1982).[2]

7  Here, the agents clearly had probable cause to arrest Daniels and search has vehicle. Based upon
8  the intercepted phone calls between Campos and Daniels, the surveillance that day of Daniels, and the prior
9  investigation of Campos, the agents had more than sufficient knowledge to believe that Daniels had just
10 participated in a 24 kilogram cocaine deal. And, because they had followed him from the drug transaction,
11 they knew that the cocaine was still in his possession. The motion to suppress the evidence seized in the
12 arrest of Daniels will be denied.

13 Daniels also seeks to suppress his post-arrest statements. The government indicates that it is not
14 aware of any post-arrest statements by Daniels. The motion will be denied without prejudice. If the
15 government indicates that it intends to introduce any, as yet unknown, post-arrest statements and Daniels
16 challenges the post-arrest statements as not being voluntarily made, the Court will conduct a hearing on a
17 date nearer the time of trial.

18 Daniels moves to suppress the evidence seized in the search of his residence arguing that the search
19 warrant authorized by United States District Court Judge Robert J. Bryan was based on an affidavit that
20 improperly relied upon a confidential informant, was based on information gleaned from an illegal arrest,
21 and failed to provide a nexus between his resident and the Campos drug conspiracy.

22 Daniels' arguments are not well-taken. The affidavit in support of the application for the search
23 warrant for Daniels' residence clearly provides probable cause for the search. The information about the
24 drug purchases from Campos and Peralta Alonzo by the confidential informant outlines Campos' and
25 Peralta Alonzo's roles and provides background for the dealings between Daniels and Campos. The
26 affidavit properly relied on Daniels' arrest because, as set forth above, Daniels' arrest was lawful as was

---

28  [2]Daniels' reliance on cases under the Washington constitution is misplaced. State law on arrests without a warrant may govern when there is no controlling federal statute, *see Johnson v. United States*, 333 U.S. 10, 15 (1948); however, Daniels was arrested for violations of federal narcotics laws.

the search of his vehicle. As to Daniels' nexus argument, the Ninth Circuit has consistently held that it is reasonable to search for evidence of drug dealing where drug dealers live. *See e.g. United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). Daniels' attempt to limit the argument to a nexus between his home and Campos' drug dealing activity ignores the fact that Daniels was arrested with a large amount of cocaine and currency. For these reasons, Daniels' motion to suppress evidence seized at his residence will be denied.

Defendant Daniels' Motion to Suppress Seized Evidence [Dkt. #36] is **DENIED** as to his arrest, search of his vehicle, and search of his residence; is **DENIED WITHOUT PREJUDICE** as to his post-arrest statements.

Defendant Daniels' Motion to Suppress Intercepted Communications for Failure to Demonstrate Necessity [Dkt. #58] is **DENIED.**

**IT IS SO ORDERED.**

The Clerk shall send uncertified copies of this order to all counsel of record, and to any party appearing pro se.

Dated this 17th day of January, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE